FILED'07 SEP 14 13:44USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DARREL MOORE, | ) |
| | ) |
| Plaintiff, | )   CV-06-1080-CL |
| | ) |
| v. | )   FINDINGS AND |
| | )   RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

CLARKE, Magistrate Judge:

## INTRODUCTION

Plaintiff Darrel Moore brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed and the case dismissed.

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Moore was born January 3, 1956. Tr. 52.[1] He completed the tenth grade. Tr. 90. Moore worked as a material handler, material specialist, and retail receiving coordinator. Tr. 85, 471. Moore alleges disability from August 13, 2002 due to post-traumatic arthritis of the ankle, cervical disc disease, chronic tendinitis, reflex sympathetic dystrophy syndrome, chronic back and neck pain following cervical fusion, neuralgia, anxiety, depression, and the side effects of medications. He applied for DIB on February 20, 2003, and his application was denied. A hearing was held before an Administrative Law Judge (ALJ) on January 18, 2006. Moore satisfies the insured status requirements for a claim under Title II through December 31, 2007, and must establish that he was disabled on or before that date to prevail on his DIB claim. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). The ALJ issued an opinion on February 16, 2006, finding Moore not disabled, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*,

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

2 - FINDINGS AND RECOMMENDATION

482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. An impairment is severe if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1521. The burden to show a medically determinable severe impairment is on the claimant. *Bowen v. Yuckert*, 482 U.S. at 146. Moore alleges the ALJ improperly determined his mental impairments were not severe and failed to adequately assess the combination of his impairments. If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96-8p. Moore challenges the ALJ's determination of his RFC. At step four, the Commissioner must determine whether the claimant retains the RFC to perform work he has done in the past. If the ALJ determines that he retains the ability to perform his past work, the Commissioner will find the claimant not disabled. 20 C.F.R. § 404.1520(f). The ALJ found Moore was unable to perform past relevant past work.

When the adjudication reaches step five, the Commissioner must determine whether the claimant can perform any work that exists in the national economy. *Bowen v. Yuckert*, 482 U.S. at 142; 20 C.F.R. § 404.1520(g). Here the burden of production shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir 1999); 20 C.F.R. § 404.1566. If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 404.1520(g). Moore challenges the ALJ's finding that he can perform other work in the national economy.

3 - FINDINGS AND RECOMMENDATION

## THE ALJ's FINDINGS

The ALJ found the medical evidence established Moore has severe impairments of right ankle problems and residual neck pain status post cervical fusion. Tr. 17. He determined Moore's impairments did not meet or equal the criteria for a listed impairment enumerated in 20 C.F.R. Part 404, subpart P, appendix 1 (Listing of Impairments). Tr. 18. In determining Moore's RFC, the ALJ found he was able to perform light work with the ability to stand or walk two out of eight hours, and to sit for six out of eight hours. The ALJ found Moore would benefit from a sit/stand option and should not crawl or climb on ladders, ropes or scaffolds. He also limited Moore to occasional climbing, balancing, stooping, kneeling, and crouching. The ALJ also found Moore " occasionally uses a cane. He can perform overhead reaching up to 10 pounds. Because of side effects from medication and pain, he should not be required to perform skilled work." Tr. 19.

The ALJ elicited testimony from an impartial vocational expert (VE). Tr. 471-477. The ALJ agreed with the VE that Moore was unable to perform his past relevant work. Tr. 20. The ALJ asked the VE whether an individual of Moore's age, education, experience, and RFC was capable of making an adjustment to other work. The VE replied Moore could perform jobs that exist in the national economy including bench assembly worker, small products assembly worker, and cashiering. Tr. 472-474. The VE testified the numbers would be reduced for a sit/stand option. Tr. 474-475. The ALJ found Moore could perform work that exists in significant numbers in the country and was not disabled within the meaning of the Social Security Act. Tr. 21.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C.

§ 405(g); *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)(citations omitted).

The ALJ is responsible for resolving conflicts in the medical evidence and determining credibility. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d at 1039-1040.

## DISCUSSION

Moore alleges the ALJ erred in determining his mental impairments were not severe and in determining the limitations of the combination of all of his impairments. He contends the ALJ erred in determining his RFC by improperly rejecting the opinions of his treating physicians regarding his limitations. Moore further alleges the ALJ erred in evaluating his credibility and the testimony of the lay witness. Moore also argues the ALJ erred at step five and the Commissioner failed to demonstrate Moore could perform other work in the national economy.

### I. Medical Background

Moore suffered a severe fracture of his right ankle when he was nineteen and underwent various surgeries and treatments for post traumatic arthritis. Tr. 178, 253. Dr. Kadwell, Moore's primary care physician, treated him for depression, anxiety, and job stress in August 2000. Tr. 234. Dr. Kadwell prescribed Paxil, Xanax, and sleeping medications. *Id.* Dr. Murray diagnosed Moore

5 - FINDINGS AND RECOMMENDATION

with Anxiety Disorder, NOS in August 2000. Tr. 207-208. He noted Moore was working sixty-three hours a week, not sleeping well and was over anxious. Tr. 206-208. Dr. Murray also noted Moore had a panic attack in October 2000, and continued prescribing Paxil, Darvocet and Xanax. *Id.* In October 2001, Dr. Kaesche performed surgery on Moore's right ankle and foot and noted Moore would be off work for three to six weeks. Tr. 175-176. Dr. Kaesche gave Moore a note in December 2001, allowing him to do overtime work. Tr. 169. In January 2002, Dr. Kaesche noted Moore wanted to increase to nonrestrictive work. Tr. 168. He also noted that he and Dr. Kadwell were concerned about Moore's use of pain medications and referred him to Dr. Fiks at Advanced Pain Management Center. *Id.*

Moore had an accident with a wave runner while on vacation and Dr. Kadwell treated him for neck and shoulder pain in February 2002. Tr. 219. In March 2002, Moore got an advancement at work which required more time on his feet. He requested pain medication from Dr. Kadwell for ankle, feet, shoulder, and neck pain. Tr. 218. Dr. Kadwell stated Moore needed a statement from Dr. Fiks in order to obtain medication. Dr. Fiks recommended sympathetic spinal blocks and a spinal cord stimulator. *Id.* Dr. Kadwell noted in July 2002 that an MRI confirmed a large lateral disk protrusion in C6-7 with nerve irritation and a minor disk protrusion at C5-6. He diagnosed cervical radiculopathy and referred Moore to Dr. Soldevilla, a neurosurgeon. Tr. 199, 215.

Dr. Soldevilla noted significant left-sided C6-7 disk herniation with marked compression of the thecal sac and nerve root. He also noted markedly diminished range of motion (ROM) in Moore's neck due to pain. Dr. Soldevilla recommended anterior cervical diskectomy and fusion of C6-7. Tr. 182-183. He performed the surgery in August 2002, and found and removed a large free fragment of disk which was compressing the thecal sac and left cervical nerve root. Tr. 184-186.

6 - FINDINGS AND RECOMMENDATION

In September 2002, Dr. Soldevilla noted the post surgery x-rays were good and that Moore was doing quite well despite some neck pain. He noted Moore needed to start physical therapy to increase his ROM. Dr. Soldevilla also noted Moore could probably return to work in the middle of October 2002. Tr. 202. In December 2002, Dr. Soldevilla noted Moore was doing reasonably well but was "not working due to significant work place ergonomic problems." *Id.*

Moore received treatment from Dr. Fiks and other providers at the Advanced Pain Management Center from March 2002, through November 2005. Tr. 290-435. Dr. Fiks recommended an implantation of spinal cord stimulator but Moore was uncomfortable with the recommendation and refused the procedure. Tr. 338. Moore agreed to the implantation in 2003, but lost his insurance coverage and did not have the procedure. Tr. 325. Medical notes indicate Moore was prescribed MS Contin for pain but was switched to Methadone due to concentration problems in February 2003. Tr. 323, 347. Moore complained of nausea from the Methadone and was treated with Phenergan. Tr. 319. He eventually obtained a medical marijuana card. Tr. 305, 323. Although the medical notes from the Advanced Pain Management Center indicate Moore had some periods with increased pain complaints, he generally controlled his medication side effects; had adequate pain relief; performed basic activities of daily living (ADL) and some household chores; did stretching exercises; and undertook some travel. Tr. 295, 301, 309, 406, 413, 417, 419, 428, 431, 434-435.

Dr. Kadwell treated Moore in September 2002, and noted Moore was fearful of losing his job and believed he was going to be permanently disabled. Dr. Kadwell noted Moore was still recovering from his surgery and it was premature to describe his condition as being permanently disabled. Tr. 211. In treatment notes from December 11, 2002, Dr. Kadwell stated Moore was

7 - FINDINGS AND RECOMMENDATION

unsure of whether to follow the recommendation for an implanted electrical stimulator. He noted Moore was worried about losing his job because he could not stay on his feet and was "becoming increasingly more disabled in his mind." Tr. 210. Dr. Kadwell also noted Moore wanted to apply for disability and was worried about complying with treatment recommendations. He assessed cervical disk disease with cervical radiculopathy and chronic pain management, arthritis in the right ankle, depression and anxiety. He recommended continuation of Paxil. *Id.* The notes from the Advanced Pain Management Clinic indicate the prescription for Paxil continued through 2005. Tr. 413, 417, 422, 425, 428.

Dr. Webster, a state agency consultant, examined Moore on July 7, 2003. Tr. 253-257. She noted Moore last worked in December 2002; could perform basic activities of daily living (ADL); was taking Methadone; and experienced some anxiety from his pain. Dr. Webster assessed chronic pain syndrome in the right ankle secondary to trauma, pain in the cervical spine with radiation to left arm, status post herniation. She noted, "the claimant seems to be able to hear and speak in a normal fashion, use his arms and hands in a normal fashion, but it seems that he has a permanent disability with dramatic decreased range of motion in his right ankle and chronic pain that is exacerbated by standing and any kind of walking." Tr. 257.

Dr. Patrick, a state agency consultant, conducted a psychological examination of Moore on July 10, 2003. Tr. 258-264. He noted Moore stopped taking Paxil because he lost his health insurance although Moore stated he functioned better with the Paxil. Tr. 259. Dr. Patrick noted Moore was independent with ADLs; was able to drive; and helped his wife somewhat with household chores. Tr. 260. He also noted Moore had a "tendency to somatize under stress, and his objective findings of physical pain condition appear to be exacerbated by this tendency." Tr. 261-262. Dr. Patrick noted further that although Moore might benefit from counseling, "he appears to

8 - FINDINGS AND RECOMMENDATION

be rather entrenched in his disability and unlikely to have significant changes in his functionality over time. This is particularly of note in light of the secondary gain factors associated with his long-term disability reimbursement and his condition." Tr. 262. Dr. Patrick diagnosed Moore with Major Depressive Disorder and Pain Disorder associated with both psychological factors and a general medical condition, chronic. *Id.*

Dr. Lahman, a state agency consultant, completed a Psychiatric Review Technique form on August 29, 2003. Tr. 265-278. After noting the above diagnoses of Major Depressive Disorder and Pain Disorder, Dr. Lahman determined Moore had only mild limitations in social functioning. *Id.* Dr. Rethinger agreed with this assessment on February 5, 2004. *Id.* Dr. Jensen, a state agency consultant, developed work limitations for Moore based on post traumatic arthritis in the right ankle and post laminectomy syndrome. Tr. 280-285. She noted he could lift twenty pounds occasionally and ten pounds frequently; stand and walk for two hours out of eight hours; sit for six hours out of eight hours; never climb ropes, ladders and scaffolds; only occasionally perform activities involving kneeling, crouching, stooping, balancing, and overhead lifting; and only occasionally climb ramps or stairs. *Id.* Dr. Westfall agreed with this assessment on February 6, 2004. *Id.*

## II.     Step Two Determination of Impairments

Moore asserts the ALJ erred at step two of the sequential analysis by failing to find his mental impairments were severe. At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. An impairment is severe if it significantly limits the ability to do basic work activities. These include physical functions, such as seeing, hearing, speaking, walking, standing and sitting, and mental functions, such as understanding, remembering, using judgment and responding appropriately to work situations. 20 C.F.R. § 404.1521(b). If there is no finding of severe impairment, the Commissioner will find the

9 - FINDINGS AND RECOMMENDATION

claimant "not disabled" without continuing the remaining steps of the sequential process. 20 C.F.R. § 404.1520(a)(4)(ii); SSR 85-28.

Moore asserts the ALJ failed to properly consider his depression and chronic pain syndrome. He further asserts the ALJ failed to discuss his diagnosis of anxiety. Dr. Murray diagnosed Moore with anxiety disorder in 2000 and prescribed Paxil. Tr. 207-208. Dr. Kadwell prescribed Paxil for Moore's depression and anxiety and he continued taking it through 2005. Tr. 234, 406, 422. However, a diagnosis without significant functional limitations does not compel a finding of "severe" impairment. SSR 85-28. Moore bears the burden of proving that his impairments are severe. 20 C.F.R. § 404.1512; *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The mere fact that a condition has been acknowledged with a medical diagnosis does not in itself equate to a finding of severe impairment or disability. 20 C.F.R. § 404.1521; *See, Key v. Heckler*, 754 F.2d 1545, 1549-1050 (9th Cir. 1985). The ALJ must determine whether a claimant's impairments cause functional limitations that interfere with his ability to work. 20 C.F.R. § 404.1545; SSR 96-8p.

Moore's treating physicians do not mention any functional limitations from his mental conditions and he continued to work for two years following Dr. Murray's diagnosis of anxiety disorder. The ALJ noted he was considering Moore's depression, pain disorder, and other complaints and "their secondary impact in conjunction with the claimant's 'severe' impairments noted above." Tr. 17; 20 C.F.R. § 404.1523. The ALJ found there were no significant work-related functional limitations from Moore's mental impairments. He noted the state agency examining physicians agreed. Tr. 17.

The ALJ assessed Moore's mental impairments as not severe based on substantial evidence in the record. He found Moore had other severe impairments and properly continued the sequential analysis. Tr. 17. Even if there was an error made by the ALJ at step two it would be harmless

10 - FINDINGS AND RECOMMENDATION

because "the step was resolved in [the claimant's] favor." *Stout v. Commissioner of Soc. Sec. Admin.*, 454 F. 3d 1050, 1055 (9th Cir. 2006) (citations omitted).

### III.  RFC Determination

#### A. Physician Opinions

Moore argues the ALJ failed to address Dr. Soldevilla's limitations regarding neck mobility, specifically, his ability to "look down." Dr. Soldevilla found markedly diminished ROM in the neck due to severe neck pain on August 8, 2002. Tr. 183. On August 13, 2002, he performed an anterior cervical diskectomy and fusion of C6-7. Tr. 184-186. Dr. Soldevilla's post-surgery notes indicate Moore was doing well, his x-rays were good, and Moore needed physical therapy to increase his ROM. Tr. 202. Although Moore had some neck pain, Dr. Soldevilla noted Moore could return to work in mid-October 2002. *Id.* In December 2002, Dr. Soldevilla indicated Moore was doing reasonably well but was not working due to significant workplace ergonomic problems. Tr. 202.

The ALJ discussed Dr. Soldevilla's opinion in determining Moore's impairments. Tr. 16. In fact, the ALJ noted he gave more weight to the assessments of Moore's treating and examining physicians than to the state agency physicians. Tr. 18. Moore does not provide any medical evidence that Dr. Soldevilla found limitations in his ability to look down after the surgery of August 13, 2002, which is the date Moore asserts he became disabled. Moore does not point to any other medical evidence in the record indicating he had an inability to look down.

Moore also asserts the ALJ failed to discuss his diagnosis of anxiety made by Dr. Kadwell, a treating physician. Dr. Kadwell's notes from August 2002, note Moore has chronic depression. Tr. 212. In September, 2002, Dr. Kadwell noted Moore was fearful of losing his job and insurance. He also noted that although Moore thought his multiple problems were leading to permanent

11 - FINDINGS AND RECOMMENDATION

disability, Dr. Kadwell told him it was "premature to describe his condition as permanently disabled" and no longer able to work. Tr. 211. He also again noted chronic depression. *Id.*

In December 2002, Dr. Kadwell noted Moore appeared anxious about losing his job and was "becoming increasing more disabled in his mind." Tr. 210. This statement was discussed by the ALJ. Tr. 19. Dr. Kadwell also noted Moore had increased depression and anxiety and recommended a continuation of Paxil and therapy. Tr. 210. The ALJ noted Moore's depression, pain disorder, and "other" complaints, but stated

> ...there is nothing to show that they are more than transient and/or cause significant vocational limitations. (20 CFR § 404.1520a(d)(1)). The State Agency (DDS) agreed at Exhibit 15F. Any such impairment is not a severe medically determinable impairment on its own; however, I have considered these complaints and their secondary impact in conjunction with the claimant's "severe" impairments noted above.

Tr. 17. The ALJ did not name Dr. Kadwell, but referred to him as a "treating provider." Tr. 19.

As discussed above, even assuming Moore had a diagnosis of anxiety, Dr. Kadwell did not opine that it interfered with Moore's ability to work. The state agency consultants found no functional limitations from Moore's mental impairments. Moore worked for two years following a diagnosis of anxiety from Dr. Murray, which supports the ALJ's finding that Moore's mental impairments did not cause significant vocational limitations. As noted above, the main issue in determining a claimant's RFC is the functional limitations resulting from a condition, and not merely a diagnosis. *See, Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005). The RFC contains the functional limitations the ALJ found were supported by substantial evidence. The ALJ is not required to include limitations in an RFC he found neither credible nor supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005).

## B. Credibility Determination

Moore asserts the ALJ failed to properly evaluate his testimony regarding his limitations. The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Moore has a medically determinable impairment which could produce some of his symptoms. When there is an underlying impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding the severity of symptoms only by providing clear and convincing reasons based on specific findings. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In assessing credibility, the ALJ may consider objective medical evidence and the claimant's treatment history. *Smolen v. Chater*, 80 F.3d at 1285. The ALJ found Moore's assertions of pain and disability inconsistent with his treatment record. The ALJ found that although Moore had impairments which caused some limitations, these conditions did not prevent him from performing any work. He noted Moore's ankle condition was long standing and his condition was "no worse than when he was working and walking on it all the time." Tr. 18. As noted by the ALJ, Moore was expected to return to work after his neck surgery. Tr. 19, 202. The ALJ also noted Moore claimed to have a cervical limitation of "not looking down," although there is no medical record of this limitation. Tr. 19. Dr. Webster found a 30 degree range of motion of both flexion and rotation and described no cervical limitations on looking down. Tr. 19, 253-257.

In addition to objective medical evidence and the claimant's treatment history, the ALJ may also consider compliance with treatment and the effectiveness of medications. *Smolen v. Chater*, 80 F.3d at 1284; SSR 96-7p. The ALJ noted Moore's pain was reported to be adequately controlled by Methadone. Tr. 19, 425. The ALJ may also employ ordinary techniques of credibility

13 - FINDINGS AND RECOMMENDATION

evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Smolen v. Chater*, 80 F. 3d at 1284. The ALJ noted Dr. Patrick, the examining psychologist, stated Moore was "entrenched" in disability thinking, and that Dr. Patrick noted secondary gain factors. Tr. 19. The ALJ also noted Dr. Kadwell's comment that Moore was becoming more disabled in his own mind. In addition, the ALJ noted inconsistencies between Moore's testimony regarding his sleep problems and statements made to health care providers indicating no problems with sleep. Tr. 19, 295, 298, 425-427, 461-462.

The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d at 1285. The ALJ noted Moore's activities of daily living were good. He also noted Moore's work history with ankle problems. The ALJ further noted Moore was able to accompany his wife on trips, including a 2005 trip to Mexico. Tr. 18-19. The ability to perform daily household chores may indicate an ability to work. *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995); *Curry v. Sullivan,* 925 F.2d 1127, 1130 (9th Cir. 1990). On the other hand, a disability claimant does not need to be "utterly incapacitated to be eligible for benefits." *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). Nevertheless, if the claimant's level and type of activity is inconsistent with his claimed limitations, his activities do have a bearing on his credibility. *Id.* The ALJ gave clear and convincing reasons for rejecting Moore's assertions regarding his inability to do any work. The ALJ's duty is to assess credibility and he did so based on substantial evidence in the record.

### C. Lay Witness Testimony

Moore asserts the ALJ improperly rejected the written testimony of his wife. Mrs. Moore completed a questionnaire regarding her husband's activities of daily living Tr. 115-126. She noted

14 - FINDINGS AND RECOMMENDATION

her husband left the house daily; drove to the bank, store, and on short errands; took naps; exercised lightly; took care of a pet; attended social functions such as birthday parties; was unable to do housework due to pain; and experienced side effects such as loss of appetite, sleepiness, concentration problems and memory problems. *Id.* Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala*, 12 F.3d at 918-919. Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.* Inconsistency with medical evidence is one such reason. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001).

The ALJ noted he considered Mrs. Moore's testimony but rejected her conclusion that Moore was unable to work. The ALJ stated Mrs. Moore had no vocational expertise and was "not trained to critically evaluate whether the claimant's complaints are exaggerated or inconsistent with objective evidence." Tr. 18. However, the court has found that lay witnesses "can often tell whether someone is suffering or merely malingering." *Dodrill v. Shalala*, 12 F. 3d at 919. The ALJ also found the medical evidence more reliable than that of Mrs. Moore. He noted Dr. Fik's medical notes regarding control of pain and side effects. Tr. 17. Although the ALJ's reasoning regarding Mrs. Moore expertise and training is incorrect, the ALJ also found the medical evidence more persuasive. *See, Lewis v. Apfel*, 236 F.3d at 511. One incorrect reason does not invalidate the entire credibility finding. *See, Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1197.

The ALJ considered Moore's pain and side effects from medication and specifically limited him to simple unskilled jobs because of those conditions. He essentially credited Mrs. Moore's observations of her husband's pain and side effects by including restrictions in the RFC. Any potential error would be irrelevant to the disability conclusion and thus harmless. *Stout v.*

15 - FINDINGS AND RECOMMENDATION

*Commissioner, Soc. Sec. Admin.,* 454 F.3d at 1055. The ALJ was not required to accept Mrs. Moore's conclusions regarding Moore's disability, which is the province of the Commissioner. 20 C.F.R. § 404.1527.

Moore also asserts the ALJ did not properly consider the effects of his medications on his ability to work. However, the ALJ specifically discussed Moore's side effects, including those which were remedied. He also limited Moore to unskilled work "because of side effects from medication and pain." Tr. 19. The determination of the RFC, which is a vocational decision, is based on the entire record and rests with the ALJ. 20 C.F.R. § 404.1546, SSR 96-5p. The ALJ gave legally sufficient reasons based on substantial evidence in the record for determining Moore's RFC.

### III. Step Five Determination

Moore argues the ALJ erred at step five by not including all of his limitations in the hypothetical question posed to the VE. The ALJ evaluated the evidence and reached an RFC assessment that reflected the limitations the evidence reasonably supported. The ALJ was not required to pose a hypothetical that contained limitations he did not find were supported by substantial evidence in the record. *Osenbrock v. Apfel,* 240 F.3d 1157, 1164-1165 (9th Cir. 2001). He elicited testimony from the VE with a hypothetical question that included all of Moore's limitations articulated in his RFC assessment. The VE testified that there were jobs in the national economy that Moore could perform based on his RFC, age, education, and experience. Tr. 472- 475. It was proper for the ALJ to rely on the VE's answer to a hypothetical that contained all of the limitations supported by substantial evidence. *Bayliss v. Barnhart,* 427 F. 3d at 1217-1218.

Moore asserts the VE testimony was confusing because the sit/stand option included in the RFC reduced the number of jobs cited by the VE by approximately two-thirds. Tr. 475. However, the ALJ cited the correct number of jobs in his opinion , approximately one-third of the number of

16 - FINDINGS AND RECOMMENDATION

jobs given by the VE. *Id.* Moore also seems to assert that the Commissioner has the burden of proving he is capable of working eight hours a day and performing the jobs identified by the VE. However, the burden of proving disability is always on the claimant. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999). At step five, the burden of production shifts to the Commissioner to show there are jobs which exists in the national economy the claimant can perform given his age, experience and RFC. *Tackett v. Apfel,* 180 F.3d at 1100. The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Roberts v. Shalala,* 66 F.3d at 184. The ALJ asked the VE whether there were jobs Moore could perform given his RFC, age, and experience. The VE testified there were. The ALJ's decision that Moore could perform jobs in the national economy was based on substantial evidence in the record.

## CONCLUSION

Based on the foregoing, the ALJ's decision that Moore is not disabled under the Social Security Act is based on correct legal standards and supported by substantial evidence.

## SCHEDULING ORDER

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to these Findings and Recommendation, if any, are due by October 1, 2007. If objections are filed, any responses to the objections are due 14 days after the objections are filed.* Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will

constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 14 day of September, 2007.

Mark D. Clarke
United States Magistrate Judge